IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PASTOR CESILIO,

    Plaintiff,                           No. CIV S-05-1466 DFL DAD P

    vs.

DR. B. NAKU, et al.,                  <u>ORDER AND</u>

    Defendants.                   <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief pursuant to 42 U.S.C. § 1983. The matter is before the court on defendants' motion for summary judgment or summary adjudication.

BACKGROUND

        Plaintiff is confined at California State Prison-Solano ("CSP-Solano") and was confined there when he commenced this action. The case is proceeding on plaintiff's original complaint filed July 21, 2005.

        In the caption of his complaint, plaintiff identifies as defendants three doctors who were employed at CSP-Solano at the relevant times: Dr. B. Naku, Physician; Dr. D. Thor, Chief Physician and Surgeon; and Dr. A. Traquina, CMO. Plaintiff's list of defendants on page 3 of his complaint includes "Dr. Rohrer, M.D." Plaintiff's allegations suggest that Dr. Naku was

1  plaintiff's primary treating physician. Although plaintiff's statement of claim contains no
2  specific allegations against Dr. Rohrer, Dr. Thor, and Dr. Traquina, the job titles attributed to Dr.
3  Thor and Dr. Traquina imply their involvement in plaintiff's medical care. At screening, the
4  undersigned found that plaintiff's complaint, liberally construed, appears to state claims against
5  defendants Naku, Thor, and Traquina. Plaintiff did not object to the order authorizing service of
6  the complaint only on defendants Naku, Thor, and Traquina.

7       Defendants Naku, Thor, and Traquina waived service of summons and filed their
8  answer to plaintiff's complaint on October 21, 2005. A discovery order was filed on October 25,
9  2005. On January 11, 2006, the parties were ordered to file status reports, and all parties have
10 done so. However, because of defendants' pending dispositive motion, the court has deferred
11 issuance of a scheduling order.

12      Plaintiff did not file a timely response to defendants' summary judgment motion,
13 and his initial untimely response was a motion to strike, stay, or dismiss defendants' motion.
14 Plaintiff subsequently filed untimely opposition to defendants' motion, and defendants filed a
15 reply.

16      The court construed plaintiff's motion to strike, stay, or dismiss as a Rule 56(f)
17 motion and denied the motion because plaintiff did not show what facts he hoped to discover
18 through discovery, did not put forth sufficient facts to show that any evidence he would seek
19 actually existed, did not show that any facts he might discover would raise issues of material fact,
20 and did not demonstrate that he pursued discovery diligently before defendants filed their motion
21 for summary judgment. The court also determined that plaintiff's opposition to defendants'
22 summary judgment motion was inadequate. Plaintiff was ordered to file supplemental opposition
23 in which he reproduces defendants' statement of undisputed facts and admits or denies each fact
24 with citations to evidence that supports every denial of an asserted fact. Plaintiff was advised
25 that all evidence cited in his supplemental opposition, if not already part of the record on file,
26 must be appended to the supplemental opposition. The court granted plaintiff's request for an

enlargement of time to file supplemental opposition. Plaintiff filed his supplemental opposition on June 1, 2006. Defendants filed a reply on June 2, 2006.

On June 26, 2006, the court determined that plaintiff's supplemental opposition did not comply with the court's April 10, 2006 order. Plaintiff was directed to review his prison medical file and submit amended admissions and denials. Plaintiff filed amended admissions and denials on July 14, 2006. Defendants filed an amended reply on July 19, 2006.

## PLAINTIFF'S CLAIMS

The factual allegations of plaintiff's complaint are as follows: On October 15, 2004, plaintiff fell from his assigned middle bunk onto the cement floor, a distance of three to four feet, and struck his head on a metal stool attached to the bunk; correctional staff alerted medical staff; an MTA responded and arranged for plaintiff to be transported to an outside hospital; plaintiff waited in the receiving and release area for approximately one and a half hours; at approximately 3:00 p.m., he was given a shot that lessened the pain a little; at approximately 3:30 p.m., plaintiff was transported to Vaca Valley Hospital, where x-rays were taken; plaintiff was returned to the prison and housed in the same housing unit in the same bunk; plaintiff was taken to the prison clinic, where he was seen by a doctor who issued a prescription for Ibuprofen; plaintiff requested that he be moved to another bunk; the doctor said he would take care of it, but plaintiff was not moved to another bunk immediately; plaintiff spoke to staff numerous times about moving to a different bunk; on October 18, 2004, three days after his fall, plaintiff was taken to the clinic, where he was seen and examined by Dr. Naku; Dr. Naku told plaintiff he did not have a broken back but had bruises on his back and head; plaintiff informed the doctor that his left foot "falls asleep fast," which makes it hard to sleep, that his head hurts so bad his vision is blurred, that he is in constant pain from his back, that he cannot sit up for more than twenty minutes or stand up for more than thirty minutes, and that all he can do when he is in his bunk is lie on his side; Dr. Naku prescribed three medications, reissued an order for plaintiff to be moved to another bed, and recommended that plaintiff be seen by an optometrist; on November 1, 2004,

plaintiff still had not been moved to another bed; he saw the doctor again on that date and told him that the prescribed medications were not doing any good and he was still in constant pain in his head and back; the doctor changed two of the three medications previously prescribed and arranged for plaintiff to be given "an EGO, which was normal"; the doctor stated his opinion that plaintiff's problems were a result of depression; the doctor referred plaintiff to the mental health department, which subsequently determined that plaintiff was not suffering from depression; plaintiff continued having pain and continued complaining to medical staff; when plaintiff saw the doctor again later in November 2004, he told the doctor he was having problems with his hearing due to an injury to his ear from the fall; the doctor told plaintiff there was nothing wrong with him; plaintiff said that another doctor had told him "that the Timpani in plaintiff's ear had fell down," but the doctor refused to examine plaintiff; on November 26, 2004, plaintiff filed an administrative appeal concerning his medical treatment; the appeal was denied at every level without remedy; on June 7, 2005, plaintiff was seen by medical staff in the audiology department at the prison and was told that he has a permanent loss of hearing in his right ear and may lose the peripheral vision in his right eye as a result of falling off the middle bunk and not receiving appropriate medical treatment; as of June 30, 2005, plaintiff remained in constant pain as a direct result of his accident and the denial of adequate treatment.

        Plaintiff seeks general damages in the sum of $100,000 and punitive damages in the sum of $200,000.

## THE PARTIES' ARGUMENTS AND EVIDENCE

I. <u>Defendants' Motion</u>

        Defendants seek summary judgment on the ground that they provided plaintiff with adequate medical care consistent with community standards and were in no way deliberately indifferent to plaintiff's medical needs. Defendants assert that no triable issues of fact exist and that they are entitled to judgment as a matter of law. Defendants deny plaintiff's contention that they were deliberately indifferent to plaintiff's medical needs and offer evidence that plaintiff

received appropriate medical treatment for his neck, back, ear, and eye conditions. Defendants support their contentions with the declarations of defendants Naku and Thor.

Defendant Naku declares that he is a licensed medical doctor eligible to practice medicine in the State of California. Attached to his declaration is a copy of his curriculum vitae. Dr. Naku states that he reviewed plaintiff's medical records subpoenaed from California State Prison - Solano relevant to this lawsuit and is familiar with plaintiff's medical treatment. In Dr. Naku's opinion, plaintiff's neck and back complaints were properly treated with pain medications, and such treatment was both appropriate and consistent with community care standards. Dr. Naku states that he treated plaintiff in good faith and did not take any action intended to harm or cause additional pain to plaintiff. Dr. Naku declares that he gave plaintiff the appropriate diagnosis and treatment consistent with the degree of knowledge and skill ordinarily possessed and exercised by members of his profession in similar circumstances. Dr. Naku states that he did not fail to perform any medical procedure on plaintiff which should have been performed, that he made the appropriate referrals to specialists for plaintiff's eye and ear complaints, and that he does not have the power or authority to schedule specialty medical consultations for inmate patients and can only make referrals.

Defendant Thor declares that he is a licensed medical doctor eligible to practice medicine in the State of California. Attached to his declaration is a copy of his curriculum vitae. Dr. Thor states that he has reviewed plaintiff's medical records subpoenaed from California State Prison - Solano relevant to this lawsuit and is familiar with plaintiff's medical treatment. Dr. Thor states that plaintiff was treated by Dr. Naku from October 18, 2004, through November 1, 2005, for complaints of neck and back pain, that plaintiff was treated by Dr. Thor on one occasion, and that plaintiff was also treated by Dr. Rohrer. In Dr. Thor's opinion, plaintiff's neck and back complaints were properly treated with pain medications, and such treatment was both appropriate and consistent with community care standards. Dr. Thor states that he treated plaintiff in good faith and did not take any action intended to harm or cause additional pain to

5

1  plaintiff. Dr. Thor states that he gave plaintiff the appropriate diagnosis and treatment consistent
2  with the degree of knowledge and skill ordinarily possessed and exercised by members of his
3  profession in similar circumstances. Dr. Thor states that he did not fail to perform any medical
4  procedure on plaintiff that should have been performed and that he does not have the power or
5  authority to schedule non-emergency or emergent specialty medical consultations for inmate
6  patients and can only make referrals in those circumstances.

7        The declarations of defendants Naku and Thor establish the following facts
8  regarding plaintiff's medical treatment: on October 15, 2004, plaintiff fell from his assigned
9  bunk onto the cement floor and struck his head on a metal stool attached to the bunk; plaintiff
10 was seen by Dr. Solomon shortly after the incident; Dr. Solomon examined plaintiff and gave
11 him a shot that lessened his pain; plaintiff was transported to Vaca Valley Hospital, where x-rays
12 were taken; x-rays of plaintiff's back, neck, and skull were negative for any fracture; plaintiff
13 was returned to the prison later that evening; three days later, on October 18, 2004, plaintiff was
14 seen by Dr. Naku for complaints of back pain; plaintiff had no radicular complaints; plaintiff was
15 diagnosed with myofascial pain and given pain medication; plaintiff was referred to an
16 ophthalmologist for complaints of vision problems; on November 1, 2004, plaintiff was seen
17 again by Dr. Naku, who diagnosed plaintiff with myofascial back pain, referred plaintiff to an ear
18 nose and throat (ENT) physician for an old perforated ear drum, and gave plaintiff pain
19 medication for his back complaints; there is no medical evidence to support a finding of an acute
20 traumatic ear drum perforation; on November 15, 2004, Dr. Naku saw plaintiff again for back
21 complaints and for reduced hearing in the right ear; Dr. Naku noted that an ENT consult was
22 pending; on December 10, 2004, plaintiff returned to Dr. Naku with low back complaints; Dr.
23 Naku referred plaintiff for MRI of the cervical and lumbar spine; on December 21, 2004, Dr.
24 Naku prescribed pain medication for plaintiff, gave plaintiff a chrono for soft shoes, and
25 instructed plaintiff to stay on bed rest for seven days; on January 12, 2005, Dr. Thor reviewed
26 plaintiff's treatment history and noted MRI's were pending; Dr. Thor referred plaintiff for a

neurology consult; a cervical MRI on January 21, 2005, showed degenerative changes but no nerve or spinal cord impingement; a lumbar MRI the same day resulted in the impression of degenerative changes but no nerve or spinal cord impingement; neither MRI film showed acute traumatic injury; the degenerative changes are consistent with plaintiff's age; on January 28, 2005, plaintiff was seen by Dr. Naku again; plaintiff had no radicular complaints and was diagnosed with chronic low back pain secondary to degenerative joint disease; on February 3, 2005, Dr. Naku noted that plaintiff's physical examination was normal but prescribed Motrin for pain; plaintiff was seen by Dr. Mitchell, a neurologist, on April 28, 2005; plaintiff had no radicular complaints, and Dr. Mitchell recommended conservative pain management with pain medications; plaintiff was seen by Dr. Thor on August 26, 2005; Dr. Thor referred plaintiff for an ophthalmology consult based on his eye complaints; Dr. Traquina approved the eye consultation; on November 1, 2005, plaintiff returned to Dr. Thor; the examination was unremarkable; there is no evidence that plaintiff sustained injury to his spinal cord or nerves; plaintiff's neck and back complaints were properly treated with pain medications, which is the appropriate treatment and consistent with community care standards.

      Defendants argue that their undisputed evidence shows that plaintiff was immediately rendered medical care following the fall from his bunk, that all defendants provided adequate medical care consistent with community standards, and that defendants were not deliberately indifferent to plaintiff's medical needs in any way. Defendants set forth the standards for summary judgment motions and the standards applicable to Eighth Amendment claims concerning medical treatment. Defendants contend that plaintiff suffered a soft tissue injury to his neck and back and received the accepted treatment in the community for soft tissue neck and back injuries: medications, x-rays, and follow up visits. Defendants further contend that plaintiff has an old tympanic tear that was not caused by his fall from his bunk in 2004 and that he was referred to an ENT physician and an ophthalmologist for his ear and eye complaints. Defendants argue that plaintiff's claims constitute nothing more than a disagreement with

diagnosis or treatment and that such a disagreement does not support an Eighth Amendment claim of deliberate indifference. Defendants also argue that mere negligence in diagnosing or treating a medical condition does not state an Eighth Amendment claim of inadequate medical treatment. Defendants conclude that plaintiff cannot meet his burden of proof and that defendants' motion for summary judgment should be granted.

II. Plaintiff's Briefing

    A. Opposition Filed March 16, 2006

Plaintiff argues that his affidavit and exhibits will demonstrate that there are triable issues of fact and that defendants are not entitled to judgment as a matter of law. Plaintiff asserts that the declarations of defendants Naku and Thor are "both incorrect and incomplete." Plaintiff's opposition includes a summary of his complaint, a discussion of the legal standards applicable to summary judgment motions, a statement of three undisputed facts, and a brief argument.

The first and second undisputed facts asserted by plaintiff are similar to defendants' undisputed facts Nos. 1 and 2: he is a state prisoner incarcerated at Solano State Prison and on October 15, 2004, he fell three to four feet onto a cement floor from the middle bunk of a three-bunk bed and hit his head on a metal stool attached to the bed. Plaintiff's third undisputed fact is that he was seen a number of times by defendants between October 2004 and June 2005. Plaintiff nevertheless asserts that he opposes and objects to all 39 facts presented by defendants as undisputed facts. Plaintiff claims that defendants' declarations are not evidence because they are self-serving and are not supported by authenticated records or other admissible evidence. Plaintiff argues that defendants have presented no evidence for the court to weigh in deciding whether there are factual disputes regarding the medical treatment he received. Plaintiff concludes that defendants have not met their burden.

Plaintiff's opposition was accompanied by a declaration that, for the most part, reiterates the factual allegations of his complaint. Plaintiff's statements are consistent with

defendants' declarations except as follows: (1) plaintiff declares, as alleged in his complaint, that Dr. Naku referred him to an optometrist rather than an ophthalmologist; (2) plaintiff states that Dr. Naku "would not take my complaints seriously, and on a number of occasions, simply made recommendations to other departments to get rid of me"; (3) plaintiff states that medical staff in general made "no serious efforts" to address his hearing problem; (4) plaintiff declares his belief that he did not receive appropriate diagnosis and treatment for the injuries he suffered, that medical staff failed to act in good faith, and that the medical treatment he received was not consistent with community care standards; (5) plaintiff declares that, of his own personal knowledge, he has suffered irreparable physical damage and the total and permanent loss of hearing in one ear as a result of his fall and defendants' failure to provide medical care that would have prevented irreparable physical damage; (6) plaintiff asserts that medical records will support his claims and will contradict defendants' denials of being deliberately indifferent to his medical needs.

Plaintiff does not declare that he has any medical expertise, and he does not offer evidence of such expertise. Plaintiff offers no evidence that community care standards are different from those described by defendants Naku and Thor in their declarations. Plaintiff does not indicate what treatment should have been furnished that was not furnished.

B. <u>Plaintiff's Supplemental Opposition Filed June 1, 2006</u>

In his supplemental opposition, plaintiff admits defendants' undisputed facts Nos. 1-5, 7, 16, 18, 25, 29, 34, and 37. In response to defendants' remaining 27 undisputed facts, plaintiff asserts that he is without sufficient information to admit or deny those facts and therefore denies them all. Plaintiff's denials are not supported by citations to evidence, as required by Local Rule 56-260(b) and the court's April 10, 2006 order.

Plaintiff's supplemental opposition includes another summary of his complaint, arguments presented in his previous opposition, and a second declaration that differs from his previous declaration only in minor details. With regard to his hearing loss, plaintiff declares that

he was told in December 2004 that he has lost all hearing in his right ear, that no medical staff ever told him the loss of hearing was due to an old injury, that he never suffered any problems with his hearing before his fall in October 15, 2004, and that he personally believes that he lost the hearing in his right ear because no serious efforts were made by the medical department to address the hearing problem caused by his fall.

### C. Plaintiff's Amended Admissions and Denials Filed July 14, 2006

Pursuant to the court's June 26, 2006 order, plaintiff reviewed his medical files and filed amended admissions and denials. As noted above, plaintiff previously admitted defendants' undisputed facts Nos. 1-5, 7, 16, 18, 25, 29, 34, and 37. In his amended admissions and denials, plaintiff admits defendants' undisputed facts Nos. 6, 8, 12, 14-15, 17, 19-24, 26-27, 30-33, 35-36, and 38.

Plaintiff disputes but does not deny defendants' undisputed facts Nos. 28 and 39. Defendants' undisputed fact No. 28 is as follows: "The degenerative changes [shown by cervical and lumbar MRI's on January 21, 2005] are consistent with plaintiff's age." Plaintiff "refutes" this fact by objecting that it is irrelevant, lacks foundation, is unsupported by evidence, and is improper expert opinion. Plaintiff cites no evidence that the degenerative changes shown on the MRI's are inconsistent with his age. Similarly, defendants' undisputed fact No. 39 is as follows: "There is no evidence that plaintiff sustained injury to his spinal cord or nerves. Plaintiff's neck and back complaints were properly treated with pain medications which is the appropriate treatment and consistent with community care standards." Plaintiff objects to this fact as irrelevant, lacking foundation, and unsupported by evidence other than self-serving declarations. Plaintiff cites no evidence that contradicts the statements included in No. 39. The court cautioned plaintiff that any denial not supported by a citation to evidence will be deemed an admission. Defendants' undisputed facts Nos. 28 and 39 are therefore deemed admitted.

Plaintiff has not submitted a concise statement of additional material facts in dispute, with the source thereof in the record, as permitted by Local Rule 56-260(b). Thus, the

only facts in dispute are defendants' undisputed facts Nos. 9 (erroneously titled No. 8 in plaintiff's amended admissions and denials), 10, 11, and 13.

Defendants' undisputed fact No. 9 is as follows: "Plaintiff had no radicular complaints [on October 18, 2004]." Plaintiff cites his Exhibit B and asserts that "there is absolutely no mention of plaintiff either making or not making a radicular complaint." Although plaintiff's Exhibit B shows that Dr. Naku did not include the word "radicular" in his notes on October 18, 2004, the notes reveal that Dr. Naku recorded plaintiff's complaints of neck, shoulder, and low back pain, reviewed the x-rays, and noted that they were negative with regard to plaintiff's spine, thoracic and lumbar. Plaintiff cites no evidence that his complaints were radicular in nature. See Attorneys Medical Deskbook § 5:20 (3d. ed. 2005) (defining radicular as "referring to a spinal nerve root"). The absence of the word "radicular" from Dr. Naku's notes does not contradict Dr. Naku's medical opinion that plaintiff had no radicular complaints on October 18, 2004.

Defendants' undisputed fact No. 10 is as follows: "Plaintiff was diagnosed with myofascial pain and given pain medication." Plaintiff cites his Exhibit B and asserts that the document "clearly shows that a diagnosis of myofascial pain was not made by Dr. Naku according to the medical records." Although plaintiff's Exhibit B shows that Dr. Naku did not include the word "myofascial" in his notes on October 18, 2004, the notes reflect that plaintiff complained of neck pain, low back pain, and shoulder pain and that Dr. Naku noted "probable cervical sprain." Plaintiff cites no evidence that these notes do not support a diagnosis of myofascial pain. See Stedman's Medical Dictionary (27th ed 2000) (defining myofascial as "of or relating to the fascia surrounding and separating muscle tissue). The mere absence of the word "myofascial" from Dr. Naku's notes does not contradict Dr. Naku's medical opinion that he diagnosed plaintiff with myofascial pain on October 18, 2004.

Defendants' undisputed fact No. 11 is as follows: "Plaintiff was also referred to an ophthalmologist for complaints of vision problems." Plaintiff cites his Exhibit B and asserts

that there is no reference in the medical record to his being referred to an ophthalmologist on October 18, 2004. Although plaintiff's Exhibits A and B show that Dr. Naku did not specify that plaintiff was to be seen by an ophthalmologist, Exhibit A shows that Dr. Naku noted "Refractive error," recorded that plaintiff "claims that his vision is diminishing," and decided to request an "Optometry consult." Exhibit B shows that Dr. Naku prepared a physician's request for an evaluation by the optometry department. Plaintiff does not deny that he was referred to the optometry department for complaints of vision problems within three days after his injury.

Defendants' undisputed fact No. 13 is as follows: "Plaintiff was diagnosed with myofascial back pain and referred to ear nose and throat (ENT) physician for old perforated ear drum." Plaintiff cites his Exhibit C and asserts that he complained of headaches and low back pain on November 1, 2004, and was found on that date to have a perforated right ear drum. Plaintiff denies that Dr. Naku diagnosed the perforated right ear drum as old. Although plaintiff's Exhibit C shows that Dr. Naku did not state in his notes that plaintiff's perforated ear drum was old, neither do the notes indicate that he described the perforation as new or that the perforation was the result of a recent trauma. Exhibit C does not contradict the fact that Dr. Naku referred plaintiff to an ear specialist within sixteen days after plaintiff's accident or Dr. Naku's medical opinion that the referral was for an old perforated ear drum. Plaintiff has not offered any medical record or medical opinion indicating that the perforation was recent or that it occurred during or as a result of plaintiff's fall.

III. <u>Defendants' Amended Reply</u>

Defendants contend that plaintiff failed to comply fully with the June 26, 2006 order. They object to plaintiff's exhibits and argue that those exhibits do not support plaintiff's claims. Defendants conclude that plaintiff has failed to meet his burden, particularly with regard to evidence of deliberate indifference, and reiterate that summary judgment is proper.

/////

/////

STANDARDS FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. Summary judgment should be granted "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits and/or admissible discovery material in support of the contention that a dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The party opposing summary judgment must show that any fact in contention is material, i.e., a fact that might affect the outcome of the suit under

the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In trying to establish the existence of a factual dispute, the party opposing summary judgment need not establish a material issue of fact conclusively in his or her favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

The evidence of the party opposing summary judgment is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the party opposing summary judgment. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587. Inferences will not be drawn out of the air, however; it is the opposing party's obligation to produce a factual predicate from which an inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On August 31, 2005, the court advised plaintiff of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

ANALYSIS

The Civil Rights Act under which plaintiff is proceeding provides that

> [e]very person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires an actual connection or link between the actions of each defendant and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991).

/////

1         A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle v. Gamble, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

        If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

        Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam); McGuckin v. Smith, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

/////

16

Mere differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

The undersigned finds that defendants have borne their initial responsibility of informing the court of the basis for their motion and of presenting evidence that demonstrates the absence of a genuine issue of material fact with regard to the adequacy of the medical care they provided to plaintiff after his accident in October 2004. Defendants have supported their contention that they were not deliberately indifferent to plaintiff's medical needs. In the absence of any evidence that defendants were deliberately indifferent to plaintiff's serious medical needs or that they failed to provide constitutionally adequate medical treatment, defendants have demonstrated entitlement to judgment in their favor on plaintiff's Eighth Amendment claims.

The burden shifts to plaintiff to establish the existence of any genuine issue of material fact. After careful consideration of plaintiff's opposition, supplemental opposition, and amended admissions and denials, as well as his original pleading, the undersigned finds that plaintiff has failed to establish that a genuine issue as to any material fact does exist.

Plaintiff has admitted virtually every fact asserted by defendants. Plaintiff's challenge to defendants' undisputed facts Nos. 9 and 10 is not supported by evidence that creates a genuine dispute as to either of those facts. Plaintiff's evidence does not contradict defendant Naku's medical opinion concerning either the nature of plaintiff's complaints or the correct diagnosis of plaintiff's pain on October 18, 2004. The medical records cited by plaintiff would not permit a reasonable jury to return a verdict in plaintiff's favor on his Eighth Amendment claims against defendant Naku.

Plaintiff's challenge to defendants' undisputed facts Nos. 11 and 13 fails to demonstrate that the asserted dispute as to either fact is material, i.e., that the resolution of the dispute would affect the outcome of this suit. Whether defendant Naku's referral to the

optometry department was a referral to an ophthalmologist or an optometrist is not material because in either case the evidence demonstrates that defendant Naku took plaintiff's vision problems seriously and referred plaintiff to the appropriate department for evaluation of his vision problems.  Moreover, the referral was made within three days after plaintiff's accident, and therefore any delay in treating plaintiff's vision problems, or any failure to treat them properly, was not caused by defendant Naku.  Similarly, whether plaintiff's perforated right ear drum was old or recent is not material because the evidence shows that defendant Naku took plaintiff's hearing problem seriously and referred plaintiff to a specialist for treatment.  The referral was made within sixteen days after plaintiff's accident, and any delay in treating plaintiff's hearing problem, or any failure to treat it properly, was not caused by defendant Naku.

Plaintiff has not demonstrated the existence of a genuine issue of material fact as to any other fact presented by defendants and has not demonstrated any additional facts in dispute.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must determine only whether there is a genuine issue of material fact that must be resolved by trial.  Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).  "Summary judgment is not precluded simply because there is a dispute of some facts in a case."  Multnomah School Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1264 (9th Cir. 1993).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  In order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion.  Addisu, 198 F.3d at 1134.

In the present case, plaintiff has not provided a scintilla of admissible evidence supporting a conclusion that any defendant acted with the substantial indifference required to support an Eighth Amendment claim of constitutionally inadequate medical care.  Such

indifference is an element essential to plaintiff's constitutional claims, and plaintiff's complete failure of proof concerning the subjective element of his claims renders all other facts immaterial. Plaintiff has demonstrated nothing more than vague dissatisfaction with his doctors' decisions on how to treat him. Summary judgment should be entered for defendants.

## PLAINTIFF'S MOTION TO COMPEL

On June 13, 2006, plaintiff filed a motion to compel defendant Naku to respond to a request for production of documents served on March 20, 2006. Plaintiff also seeks a declaration that defendants and their counsel have acted in bad faith during the discovery process by intentionally evading discovery and refusing to participate in the discovery process. Defendants have failed to respond to plaintiff's motion.

Plaintiff offers evidence that defendants failed to respond to his request for production of documents addressed to "B. Naku, et al." Plaintiff reveals that he served virtually identical requests on all three defendants and received virtually identical responses from defendants Thor and Traquina. It is unlikely that defendant Naku's response would differ substantially from those of defendants Thor and Traquina. Moreover, the issue of plaintiff's access to medical records has been addressed in the context of briefing defendants' motion for summary judgment. (See Order filed June 26, 2006.) In light of the fact that plaintiff was able to review his medical file and obtain copies of documents for use in opposing defendants' motion, plaintiff's motion to compel will be denied as moot.

Accordingly, IT IS ORDERED that plaintiff's June 13, 2006 motion to compel is denied as moot; and

IT IS RECOMMENDED that:

1. Defendants' February 1, 2006 motion for summary judgment be granted; and
2. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  A document containing objections should be titled "Objections to Findings and Recommendations."  Any reply to objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 26, 2006.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:13
cesi1466.57